Reversed and Rendered and Plurality and Concurring Opinions
filed August 12, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00338-CR



Gregory Carl
Green, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 40th District Court

Ellis County, Texas

Trial Court
Cause No. 32,870-CR



 

CONCURRING OPINION

            I respectfully disagree with my esteemed
colleagues’ descriptions of the Court of Criminal Appeals’s decision in Brooks
v. State.  See 323 S.W.3d 893, 894–912 (Tex. Crim. App. 2010)
(plurality op.); id., 323 S.W.3d at 912–26 (Cochran, J.,
concurring).  I write separately to address this important decision and to
respond to the assertion that the Court of Criminal Appeals lacks jurisdiction
and authority to abolish factual-sufficiency review of findings that a
defendant is guilty of a criminal offense that the State is required to prove
beyond a reasonable doubt.  I also disagree with the plurality’s departure from
this court’s analysis in the opinion on original submission and statements in
the plurality opinion that contradict a recent opinion from the Court of
Criminal Appeals.

I.  Abolition of
Factual-Sufficiency Review of Conviction Findings

The Brooks decision marked a turning point in
Texas jurisprudence regarding sufficiency-of-the-evidence review of criminal
convictions.  A historical overview is appropriate to put the Brooks
decision in context.  

A.  Historical Overview

For nine decades, from 1891 until September 1, 1981,
the Court of Criminal Appeals had exclusive appellate jurisdiction over
criminal cases, and the intermediate courts of appeals did not have criminal
jurisdiction.  See Tex. Const.
art. V, § 5 (amended 1981, 2001); id. art. V, § 6 (amended 1978, 1981,
1985, 2001).  During this period, the Texas Constitution provided that “the
decision of [courts of civil appeals] shall be conclusive on all questions of
fact brought before them on appeal or error” (hereinafter, “Factual
Conclusivity Clause”).  Id.  Therefore, until September 1981, the
Factual Conclusivity Clause could not possibly have limited the jurisdiction of
the Court of Criminal Appeals because that provision served only as a
limitation on the jurisdiction of the Supreme Court of Texas vis à vis
the courts of civil appeals.  See id.; Tex.
Const. art. V, § 5 (amended 1981, 2001);  Choate v. San Antonio &
A.P. Ry. Co., 44 S.W. 69, 69–70 (Tex. 1898).  During this period, the Texas
Legislature provided by statute that “the Court of Criminal Appeals may reverse
the judgment in a criminal action, as well upon the law as upon the facts.”[1]  See
Bigby v. State, 892 S.W.2d 864, 874 n.5 (Tex. Crim. App. 1994) (quoting
article 848 of the 1950 Code).  

There is disagreement as to whether, during this
period, the Court of Criminal Appeals reversed any criminal convictions because
the finding of guilt was so against the great weight
and preponderance of the evidence as to be manifestly unjust.[2] 
What is not disputed is that from 1891 through 1978, whether the Court
of Criminal Appeals found the evidence legally insufficient[3] or
factually insufficient, the only available remedy was reversal and remand for a
new trial; rendition of an acquittal was not an option.  See Colunga v.
State, 481 S.W.2d 866, 869 (Tex. Crim. App. 1972); Watson v. State,
204 S.W.3d 404, 432 (Tex. Crim. App. 2006) (Cochran, J., dissenting).  In 1978,
the United States Supreme Court held that, if the evidence at trial is legally
insufficient to support a defendant’s conviction in state court, then the
defendant is entitled to rendition of a judgment of acquittal under the Double
Jeopardy Clause.  See Burks v. United States, 437 U.S. 1, 17–18, 98 S.
Ct. 2141, 2150–51, 57 L. Ed.2d 1 (1978); Greene v. Massey, 437 U.S. 19,
24, 98 S. Ct. 2151, 2154, 57 L. Ed.2d 15 (1978).  Following the decisions in Burks
and Greene, the Court of Criminal Appeals, for the first time, began
rendering a judgment of acquittal if it determined that the evidence was
legally insufficient to support the conviction.  See Pfleging v. State, 572
S.W.2d 517, 520 (Tex. Crim. App. 1978) (op. on reh’g).  

The opinions in Burks and Greene did
not address what legal standard should be used to determine whether the
evidence is legally insufficient for the purposes of the United States
Constitution.  See Burks, 437 U.S. at 5, 98 S. Ct. at 2144; Greene,
437 U.S. at 24–27, 98 S. Ct. at 2154–55.  A year later, the United States
Supreme Court held that a person convicted in state court is entitled to a
judgment of acquittal under the due process protections of the United States
Constitution if, after viewing all the evidence in the light most favorable to
the prosecution, no reasonable trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  See Jackson v. Virginia,
443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89, 61 L. Ed.2d 560 (1979).

The appearance on the scene of this new remedy of
acquittal if the evidence is legally insufficient raised a new issue:  Does
Texas law provide a basis for reversing a criminal conviction upon
evidentiary-insufficiency grounds other than legal insufficiency?  If so,
then there would be a separate insufficiency ground for attacking a conviction
which, if successful, would entitle the appellant to reversal and remand for a
new trial.  In addition, there would be an issue as to the legal standard that
courts should use to determine whether the appellant is entitled to a new trial
under this theory, which is referred to in this opinion as “factual
insufficiency.”  If Texas law did not allow for appellate courts to reverse
based upon factual insufficiency, then the effect of these federal cases would
be to change the remedy for legal insufficiency from reversal and remand for a
new trial to reversal and rendition of a judgment of acquittal.  In this event,
the only available evidentiary-sufficiency challenge would be one based upon
legal insufficiency.

While these legal developments were unfolding, the
Texas Legislature proposed and the people of Texas adopted amendments to the
Texas Constitution to give the then-existing courts of civil appeals criminal
appellate jurisdiction.  See Tex.
Const. art. V, § 5 (amended 2001); id. art. V, § 6 (amended 1985,
2001).  The constitutional amendments, which took effect three decades ago, on
September 1, 1981, made the Factual Conclusivity Clause applicable to criminal
appeals for the first time.  In pertinent part, the amended portions of the
Texas Constitution read as follows:

The Court of
Criminal Appeals shall have final appellate jurisdiction coextensive with the
limits of the state, and its determinations shall be final, in all criminal
cases of whatsoever grade, with such exceptions and under such regulations as
may be provided in this Constitution or as prescribed by law.

. . .

Said Court of
Appeals shall have appellate jurisdiction co-extensive with the limits of their
respective districts, which shall extend to all cases of which the District
Courts or County Courts have original or appellate jurisdiction, under such
restrictions and regulations as may be prescribed by law.  Provided, that the
decision of said courts shall be conclusive on all questions of fact brought
before them on appeal or error.  

Tex. Const. art. V, §§ 5(a), 6(a).  At the same
time that these amendments became effective, a revision of article 44.25 of the
Code of Criminal Procedure, entitled “Cases remanded,” took effect.  In
revising this article, the Texas Legislature deleted the statutory language
that referred to reversals because the verdict is contrary to the evidence.  See
Clewis v. State, 922 S.W.2d 126, 153 (Tex. Crim. App. 1996) (McCormick,
P.J., dissenting).  Despite this revision, article 44.25 continued to provide,
as it does to this day, that “the courts of appeals or the Court of Criminal
Appeals may reverse the judgment in a criminal action, as well upon the law as
upon the facts.”    Tex. Code Crim.
Proc. Ann. art 44.25 (West 2006).  

            In 1990, the Court of
Criminal Appeals in Meraz concluded that,
under article V, section 6 of the Texas Constitution, intermediate courts of
appeals have the power to review the factual sufficiency of the evidence
regarding a matter that the defendant has the burden of proving by a
preponderance of the evidence.  See Meraz v. State, 785
S.W.2d 146, 154–55 (Tex. Crim. App. 1990).  In doing so, the Meraz court
held that the correct standard of review in such circumstances is whether,
after considering all the evidence relevant to the issue at hand, the finding
is so against the great weight and preponderance of the evidence as to be
manifestly unjust. See id. at 155.  The Meraz court
also reached the following conclusions:

·       
If an intermediate
court of appeals concludes that the evidence is factually insufficient under
this legal standard, then the proper remedy is to reverse the trial court’s
judgment and remand for a new trial.  

·       
Though the Court of
Criminal Appeals has the power to set the standard of review for this type of
factual-sufficiency review, the Factual Conclusivity Clause precludes the Court
of Criminal Appeals from reviewing whether a finding on a matter that the
defendant must prove is so against the great weight and preponderance of the
evidence so as to be manifestly unjust.

·       
Several prior cases
were overruled because in those cases the court incorrectly determined that
courts of appeals did not have conclusive jurisdiction regarding “questions of
fact” concerning the proof of an issue on which the defendant has the burden of
proof and the burden of persuasion.  

·       
The Court of Criminal
Appeals was not constitutionally authorized to adopt a standard of review for
the court of appeals concerning an evidentiary review of the insanity defense that
was inconsistent with article V, section 6 of the Texas Constitution.  

See Meraz, 785 S.W.2d at 149–55.  The Meraz court did not address whether the courts
of appeals have the power to review the factual sufficiency of the evidence
regarding  fact findings on matters that the State had the burden of proving beyond a reasonable doubt
(hereinafter, “Conviction Findings”).  See id. at 153.  In fact, the Meraz court stated that reviewing
findings upon which the defendant had the burden of proof for factual
sufficiency was “mutually exclusive” from reviewing Conviction Findings to
determine if they are supported by “sufficient evidence.”  Id.  The
Meraz court did make a general statement that “the court of appeals is
therefore constitutionally given the authority to determine if a jury finding
is against the great weight and preponderance of the evidence and if this is
improper it is up to the people of the State of Texas to amend the
Constitution.”  Id. at 154.  But, given that the Meraz court
limited its inquiry to matters that the defendant had to prove by a
preponderance of the evidence, this statement is limited to such matters.  See
id. at 153, 155.  The Meraz court did not address whether the
intermediate courts of appeals have the power to review whether factually
sufficient evidence supports Conviction Findings.  See id.

Six years later, the Court of
Criminal Appeals concluded that intermediate courts of appeals do have
this power.  See Clewis v. State, 922 S.W.2d 126, 129–36 (Tex. Crim. App. 1996). 
The Clewis court did not determine that this power arises from the
Factual Conclusivity Clause; rather, the Clewis court concluded that the
people of Texas gave the courts of appeals this power by the general grant of “appellate
jurisdiction co-extensive with the limits of [the courts of appeals’s]
respective districts.”  Tex. Const.
art. V, § 6(a); see Clewis, 922 S.W.2d at 130 & n.3.  Therefore, in
addition to holding that an appellant may seek reversal and a rendition of
acquittal based upon legal insufficiency, the Clewis court held that an
appellant may seek reversal and a new trial based upon the alleged factual
insufficiency of the evidence to support the Conviction Findings.  See id.
at 128–29, 134.  The Clewis
court held that, in reviewing the factual sufficiency of Conviction Findings,
appellate courts should view all the evidence without the prism of “in the
light most favorable to the prosecution” and should reverse the conviction only
if it is “so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.”  Id. at 129.  The Clewis court stated
that, whether the evidence is legally sufficient to support a conviction is a
question of law, and that whether the evidence is factually sufficient to
support a conviction is a question of fact.[4] 
See id. at 132–33.  

B.  The Brooks Decision

            After
the Court of Criminal Appeals modified the
legal standard for factual sufficiency of the evidence to support a conviction
at various times between 1996 and 2010, a majority of the judges on the Court of Criminal Appeals
determined in Brooks that “the Jackson v. Virginia legal-sufficiency
standard is the only standard that a reviewing court should apply in
determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable
doubt.”  Brooks, 323 S.W.3d at 894–95; id., 323 S.W.3d at
912–13 (Cochran, J., concurring).  Now, in the aftermath of the Brooks decision, legal sufficiency is the only
standard that reviewing courts may apply in determining whether the
evidence is sufficient to support Conviction Findings.  See id. at 895,
904–05; id. at 912–13 (Cochran, J., concurring).  And, the only
remedy that is available if the evidence is legally insufficient is reversal
and rendition of a judgment of acquittal.  See id.
at 895, 904–05; id. at 912–13 (Cochran,
J., concurring).  The five judges in Brooks agreed that Clewis
was being overruled and that factual-sufficiency review, with its potential
remedy of a new trial, is no longer available in reviewing Conviction
Findings.  See id. at 895, 904–05; id. at 912–13 (Cochran, J.,
concurring).  In Brooks, the Court of Criminal Appeals abolished
factual-sufficiency review as to Conviction Findings.  See Howard v. State,
333 S.W.3d 137, 138 n.2 (Tex. Crim. App. 2011); Brooks at 895, 904–05;
id. at 912–13 (Cochran, J., concurring).  But, significantly, the five judges in Brooks did not overrule Meraz, and
they did not state that the Jackson v. Virginia legal-sufficiency
standard is the only standard that a reviewing court should apply in
determining whether the evidence is sufficient to support a jury finding on an
issue that the defendant must prove by a preponderance of the evidence.  See
id. at 895; id. at 924–26 (Cochran, J., concurring); Bernard v.
State, No. 14-10-00044-CR, —S.W.3d—,—, 2011 WL 1375570, at *2 (Tex.
App.—Houston [14th Dist.] Apr. 12, 2011, pet. ref’d) (concluding that the
judges in Brooks did not overrule the Meraz holding that
factual-sufficiency review is available as to issues the defendant must prove
by a preponderance of the evidence).  

C.  The Constitutional Basis of the Brooks Decision

            The Brooks plurality made the following
conclusions: 

·       
The Clewis
factual-sufficiency standard is essentially the Jackson v. Virginia
legal-sufficiency standard; therefore, the Clewis standard violates double-jeopardy
principles.  See Brooks, 323 S.W.3d at 904–05.

·       
The Jackson v. Virginia legal-sufficiency standard is consistent
with an intermediate court of appeals’s constitutional grant of jurisdiction to
review “questions of law” and “questions of fact” under article V, section 6(a)
of the Texas Constitution and with article 44.25 of the Code of Criminal
Procedure, authorizing reversal of criminal convictions “as well upon the law
as upon the facts.”  See id. at 908–10 & n.42.

·       
Neither
the constitutional grant of jurisdiction to courts of appeals to review
“questions of fact” nor article 44.25 requires the courts of appeals to use a
legal standard other than legal sufficiency under Jackson v. Virginia to
review the sufficiency of the evidence supporting Conviction Findings.  See
id. at 911.

The Brooks plurality indicated that the Jackson v.
Virginia legal-sufficiency standard involved “questions of law” and
“questions of fact” and that reversing a conviction for legal insufficiency
would be a reversal upon the law and upon the facts.  See id. at
908–10.  Nonetheless, the Brooks plurality indicated that a court of
appeals’s legal-sufficiency review is not a question of fact conclusive upon
the high court under the Factual Conclusivity Clause.[5]  See id. at 909 &
n.35.  The concurring opinion in Brooks does not address how abolishing
factual-sufficiency review of Conviction Findings is consistent with article V,
section 6(a) of the Texas Constitution and article 44.25 of the Code of
Criminal Procedure.  See id. at 912–26 (Cochran, J., concurring).  But
this issue was raised, and therefore, the fifth judge in Brooks
implicitly concluded that this abolition of factual-sufficiency review is
consistent with these constitutional and statutory provisions.  

D.  Vertical Stare Decisis under the Texas Constitution

            The Texas Constitution grants intermediate courts of
appeals “appellate jurisdiction” in criminal cases in which the trial court has
not assessed the death penalty. Tex. Const. art. V, §§ 5(b), 6(a).  In the Texas Constitution, the
people of Texas do not expressly state that intermediate appellate courts have
any power to reverse a criminal conviction determined to be so against the great weight and preponderance of the
evidence so as to be manifestly unjust or under any other specific standard.[6] 
Even if the justices of this court were to construe article V, section 6 of the
Texas Constitution to provide for a separate factual-sufficiency review of
Conviction Findings by the courts of appeals, with the remedy for insufficiency
being a reversal and remand for a new trial and with the Court of Criminal
Appeals having no jurisdiction to review these sufficiency determinations, the
Texas Constitution provides that the Court of Criminal Appeals’s construction
of article V, section 6 is final and binding upon this court in all criminal
appeals.  See Tex. Const. art.
V, § 5 (a) (stating that “the Court of Criminal Appeals shall have final
appellate jurisdiction coextensive with the limits of the state, and its
determinations shall be final, in all criminal cases. . .”); Brooks, 323
S.W.3d at 912, n.48 (specifically invoking article V, section 5(a) of the Texas
Constitution); State of Texas ex rel.
Vance v. Clawson, 465 S.W.2d 164, 168 (Tex. Crim. App. 1971) (“‘The Court of
Criminal Appeals is the court of last resort in this state in criminal
matters.  This being so, no other court of this state has authority to overrule
or circumvent its decisions, or disobey its mandates.’”)(quoting State of
Texas ex rel. Wilson v. Briggs, 351 S.W.2d 892, 894 (Tex. Crim. App.
1961)); Gabriel v. State, 290 S.W.3d 426, 436 (Tex. App.—Houston [14th
Dist.] 2009, no pet.) (stating that “[a]s an intermediate court of appeals, we
are bound by controlling authority from the Court of Criminal Appeals”). 
Accordingly, my esteemed colleagues err to the extent they suggest that the
Court of Criminal Appeals does not have jurisdiction or authority to abolish
factual-sufficiency review of Conviction Findings.  See ante at p.5,
n.1; post at pp. 5–6.  The Court of Criminal Appeals is vested with
such  jurisdiction and authority, and in Brooks, the high court
exercised both.  See Brooks, 323 S.W.3d at 895, 904–05; id. at
912–13 (Cochran, J., concurring).  Either expressly or impliedly, the five
judges in Brooks concluded that this action is consistent with the
United States Constitution, the Texas Constitution, and applicable statutes.  

            Under the principles of vertical stare decisis contained in
the Texas Constitution, this court must follow the Brooks decision, even
if individual justices on this intermediate court disagree with the decision.  See
Tex. Const. art. V, § 5 (a); Clawson, 465 S.W.2d at 168; Gabriel, 290 S.W.3d at 436. 
Though the members of this court are free to voice their disagreement with the Brooks
decision, they are bound by the Texas Constitution as well as principles of
stare decisis and judicial restraint to follow the Brooks decision.  See
Windom v. State, 961 S.W.2d 267, 270 (Tex. App.—Houston [1st Dist.] 1997)
(Taft, J., concurring) (stating that “as an intermediate appellate court, we
are bound by decisions of the Court of Criminal Appeals even when they lead to
manifestly unjust results, as in the present case” and following a high court
precedent, while at the same time urging the high court to reexamine it), rev’d,
968 S.W.2d 360 (Tex. Crim. App. 1998).  Parties and their attorneys likewise
are free to urge a high court to overrule its prior precedent.  And, the people
of Texas, of course, may voice their disagreement by amending the Texas
Constitution; indeed, they have amended article V, section 6 of the Texas
Constitution four times since 1978.  See Tex. Const. art. V, § 6 (amended 1978, 1981,
1985, 2001); id. art. XVII § 1 (providing mechanism for the people of
Texas to amend the Texas Constitution).  This manner of effecting change in our
laws is woven into the fabric of our constitution; though it is not perfect, it
brings order and certainty to the process.  Whatever the members of this court
may conclude about the logic or soundness of the Brooks decision, in the
final analysis, the Court of Criminal Appeals gets to decide.  This is the
regime the people of Texas have chosen, and by following it, lower court judges
honor their oaths of office.

II.  Sufficiency of the Evidence
Supporting Appellant’s Conviction[7]

            In its
opinion, the plurality refers at various times to the “offense of failure to
comply with sex offender registration requirements.”  See ante at pp. 1,
4, 6.  By doing so, the plurality conflicts with Young v. State, in
which the Court of Criminal Appeals held that article 62.102 of the Code of
Criminal Procedure, entitled “Failure to Comply With Registration
Requirements,” is an umbrella statute that creates numerous criminal offenses
rather than a single offense.  See Tex. Code Crim. Proc. Ann. art 62.102 (West 2006); Young v. State, 341
S.W.3d 417, 424–25 (Tex. Crim. App. 2011).  The analysis in today’s plurality
opinion differs significantly from the analysis in this court’s opinion on
original submission.  See Green v. State, 321 S.W.3d 799, 802­–05 (Tex.
App.—Houston [14th Dist.] 2010), vacated by, No. PD-1685-10, 2011 WL
303818, at *1 (Tex. Crim. App. Jan. 26, 2011).  Therefore, an analysis of the
legal sufficiency of the evidence is set forth in this opinion.

In
his first issue, appellant challenges the factual sufficiency of the evidence
supporting his conviction.  Appellant filed his appellate brief before a
majority of the judges on the Court of Criminal Appeals abolished
factual-sufficiency review as to Conviction Findings and held that
legal-sufficiency is the only type of evidentiary review available as to these
findings.  See Howard, 333 S.W.3d at 138 n.2; Brooks at 895, 904–05;
id. at 912–13 (Cochran, J., concurring).  Therefore, it is
appropriate to review appellant’s first issue as a challenge to the
legal-sufficiency of the evidence supporting his conviction.

In
evaluating a legal‑sufficiency challenge, we view the evidence in the
light most favorable to the verdict. Wesbrook v. State, 29 S.W.3d 103,
111 (Tex. Crim. App. 2000).  The issue on appeal is not whether we, as a court,
believe the State’s evidence or believe that appellant’s evidence outweighs the
State’s evidence.  Wicker v. State, 667 S.W.2d 137, 143 (Tex. Crim. App.
1984). The verdict may not be overturned unless it is irrational or unsupported
by proof beyond a reasonable doubt.  Matson v. State, 819 S.W.2d 839,
846 (Tex. Crim. App. 1991).  The jury, as the trier of fact, “is the sole judge
of the credibility of the witnesses and of the strength of the evidence.”  Fuentes
v. State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  The jury may choose
to believe or disbelieve any portion of the witnesses’ testimony.   Sharp v.
State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  When faced with
conflicting evidence, we presume the trier of fact resolved conflicts in favor
of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim.
App. 1993).  Therefore, if any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt, we must affirm.  McDuff
v. State, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

 

            A.        Analysis—April
2007 Address Change

“If
a person required to register under [chapter 62] intends to change address,  .
. . the person shall, not later than the seventh day before the intended
change, report in person to the local law enforcement authority designated as
the person’s primary registration authority by the department and to the . . .
officer supervising the person and provide the authority and the officer with
the person’s anticipated move date and new address.”  Tex. Code Crim. Proc.
Ann. art. 62.055(a) (Vernon 2006).  If a person required to register under
chapter 62 fails to comply with this registration requirement (“Requirement”),
he commits a criminal offense.  See id. arts. 62.055(a) 62.102
(Vernon 2006).  The only offense charged in the indictment was failure to
comply with the Requirement.  Under article 62.055(a), appellant was also
required to provide proof of his new address to the applicable local law
enforcement authority for his new address within seven days after changing the
address or on the first date that the applicable authority allows appellant to
report.  See id. art. 62.055(a).  But, appellant was not charged with
violating this registration requirement.  Appellant was only charged with
violating the Requirement.  There is no dispute that appellant was required to
register; the issue is whether the evidence is legally sufficient to support a
finding that appellant failed to comply with the Requirement.

            Because
appellant did not stipulate to any of his prior convictions for indecency with
a child, the State called Officer Robert Allwardt as its first witness.  Allwardt
gave expert fingerprint identification testimony to show that appellant is the
same person convicted three times for indecency with a child in the judgments
that the State introduced into evidence.  The State had to prove at least two
such convictions as part of its burden of proof under the indictment in this
case.  The State then called Sergeant Rodney Guthrie to the stand.  Guthrie
testified as follows:

·       
He
is a police officer with the Waxahachie Police Department, who supervises and
manages the sex offender registration unit.

·       
When
sex offenders living in Waxahachie first come in to register, they fill out
some documentation, and the sex offender registration unit reviews the
registration requirements with the offenders so they understand them.  

·       
After
his initial registration appellant had a duty to come in person to the unit every
90 days to verify his registration.  

·       
In
addition to such periodic verifications, registered sex offenders are also
required to come in person to Guthrie’s office to give notice of any change in
their residence address, employment status, telephone numbers, or emergency
contacts.

·       
As
to changes in the residence addresses of registered sex offenders, “[p]rior to
any address change that [they] have, [they] must notify the registering agency
seven days prior to any change that [they are] going to make.”  

·       
Registered
sex offenders cannot move whenever they want to do so; rather they “have seven
days notification that [they] must give the agency.”  

·       
When
appellant first registered in Waxahachie in September 2005, Guthrie reviewed
several forms with appellant, including a form that specifies the registration
requirements that the sex offender must follow (“Form”).  Guthrie reviewed all
of these requirements with appellant, as shown by appellant initialing each
requirement on the form and signing the form, which was admitted into evidence.

·       
The
Form’s main reason is to spell out each requirement that the registered sex
offender must follow.  The Form “specifically says that [appellant] must give
seven days prior notice of his move or intended move before making that move.”

·       
Appellant
“had to provide the seven days [notice] prior to any move.”  

·       
Appellant
did not provide seven days prior notice of his move from 602 Highland Avenue to
1570 Holder Road.  

            In sum, Guthrie’s testimony
covered four topics: (1) appellant’s knowledge of the reporting requirements;
(2) appellant’s prior conformity with all reporting requirements; (3)
appellant’s visit on May 3, 2007, regarding the change in address and Guthrie’s
discovery that appellant had not given notice before this address change; and
(4) Guthrie’s discussion with the property manager for appellant’s residence. 
Guthrie’s testimony shed no light on whether appellant had an intention to move
from the Highland Avenue address.  The State’s final witness was Billy Graham,
the property manager at 602 Highland Avenue.  Graham testified: (1) he observed
appellant landscaping and planting flowers around the house in March or April
2007; (2)  Graham had not received a rent payment for the Highland Avenue
address in the month of April, which was not unusual; (3) on or about April 15,
2007, Graham discovered appellant’s and appellant’s wife’s belongings had been
moved from the house—but he did not witness either party moving the belongings;
(4) appellant did not tell Graham he was moving out; and (5) Graham rented the
house to another tenant without informing appellant or appellant’s wife.  Both
Guthrie and Graham testified they were aware appellant spent long periods of time
working in Arizona.  

            The
defense called one witness, Catherine Hunt, appellant’s wife.  Hunt testified
she moved from the Highland Avenue address without telling appellant until he
returned from Arizona.  Under the legal-sufficiency standard of review, we
presume that the jury did not believe Hunt’s testimony indicating that
appellant had no intent to change his address that would trigger the
Requirement.  Nonetheless, reviewing all of the evidence at trial in the light
most favorable to the jury’s verdict, we find no evidence that appellant ever
had an intent to change his address that he failed to report not later than the
seventh day before the date of the intended change of address.  There are
various ways that a person’s belongings can be moved out of a residence in the
absence of that person intending to move.  The testimony of Guthrie and Graham
that appellant had moved out of the 602 Highland Avenue residence on or about
April 15, 2007, is not evidence that appellant had an intent to move out during
this time that he failed to report at least seven days before the date of the
intended move.  

            The
testimony at trial shows that Guthrie and the prosecuting attorney both
believed that registered sex offenders have to give at least seven days’
advance notice before any address change, regardless of whether the registered
sex offender has any intent to move.  Guthrie testified that appellant was told
he had to give seven days’ prior notice of all address changes.  But, the
Requirement is triggered only “[i]f a person required to register under this
chapter intends to change address.”  Tex. Crim. Proc. Code Ann. Art.
62.055(a).  In addition, the deadline for reporting this intended address
change is not seven days before the date on which the move actually occurs;
rather, the deadline is seven days “before the intended change.”  Id. 
There are various situations in which a registered sex offender’s address may
change without the offender having any intent to change address prior to the
actual change of address.  The offender may be barred from his current
residence without warning or someone else may move the offender’s property out
of the residence and to another address without the offender’s knowledge. 
Viewing all the evidence in the light most favorable to the verdict, we
conclude that, based on that evidence and reasonable inferences therefrom, no rational
fact finder could have found beyond a reasonable doubt that appellant ever had
an intent to change his address in April 2007 that he failed to report not
later than the seventh day before the date of the intended address change.  See
Simpkins v. State, 300 S.W.3d 860, 862–65 (Tex. App.—Texarkana 2009, no
pet.) (holding evidence was legally insufficient to support conviction for
violation of sex offender registration requirement); Martin v. State,
252 S.W.3d 803, 906–09 (Tex. App.—Texarkana 2008, no pet.) (same as Simpkins);
Rios v. State, 141 S.W.3d 750, 753–54 (Tex. App.—Corpus Christi 2004,
pet. ref’d) (same as Simpkins). 

            B.        Analysis—November
2006 Address Change

            The
State also contends the jury could have found appellant committed the offense
as charged because there was some testimony indicating appellant may have
violated the reporting requirements when he initially moved to the Highland
Avenue address.  Guthrie testified appellant reported his change of address on
November 16, 2006.  But, Graham stated appellant moved into 602 Highland Avenue
on November 12, 2006.  According to the State’s argument, such testimony allows
the jury to convict appellant of the alleged violation because the jury charge
included “on or about” language.  Guthrie, however, indicated in his testimony
that appellant complied with the reporting requirements when he moved to the
Highland Avenue address in November 2006.  For the same reasons stated above as
to the April 2007 change of address, the evidence is legally insufficient to
prove that appellant failed to report an intended address change in November
2006.  

            Most
of the testimony and other evidence as well as the arguments of counsel during
trial concern the failure to report an intended move in April 2007.  The witnesses
only briefly discussed the November move and the State merely mentioned it in
passing during its closing argument.  Guthrie only discussed November briefly
and testified appellant had complied with the registration requirements.  The
first time the jury heard mention of any dates regarding the November move was
in the context of appellant following the registration requirements.  Graham
testified appellant moved into the Highland Avenue address on November 12,
2006, but based that testimony on a receipt for the rent paid by appellant’s
parents.  Graham did not testify to seeing appellant living at the house on
November 12, 2006.  Hunt stated she moved into the house the week before
Thanksgiving.  Viewing all the evidence in the light most favorable to the
verdict, we conclude that, based on that evidence and reasonable inferences
therefrom, no rational fact finder could have found beyond a reasonable doubt
that appellant ever had an intent to change his address in November 2006 that
he failed to report not later than the seventh day before the date of the
intended address change.  See Simpkins, 300 S.W.3d at 862–65; Martin,
252 S.W.3d at 906–09; Rios, 141 S.W.3d at 753–54.  

Under
the applicable standard of review, the evidence is legally insufficient to
support appellant’s conviction.  See Simpkins, 300 S.W.3d at 862–65; Martin,
252 S.W.3d at 906–09; Rios, 141 S.W.3d at 753–54.  Accordingly,
appellant’s first issue is sustained.  The trial court’s judgment is reversed,
and a judgment of acquittal is rendered.[8]

 

III.  Conclusion

            The Court of Criminal Appeals is vested with the
jurisdiction and authority to abolish factual-sufficiency review of Conviction
Findings, and it did so in Brooks.  In the case under review, the
plurality opinion is not faithful to this court’s analysis on original
submission, and contrary to precedent from the Court of Criminal Appeals, the
plurality states that article 62.102 contains a single offense.  See Tex. Code
Crim. Proc. Ann. art
62.055(a) (West Supp. 2010); Young, 341 S.W.3d 417, 424–25.  Accordingly, I do not join the
plurality’s analysis.  Nonetheless, the evidence is legally insufficient to
support appellant’s conviction, as set forth in Part II, which portion, joined
by Justice Seymore, is the majority opinion of the court.  

 

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

Panel
consists of Justices Anderson, Frost, and Seymore.  (Anderson, J., plurality)
(Seymore, J., concurring).

 

Publish — Tex. R. App. P. 47.2(b).

 

 

 









[1] Though the
Texas Legislature deleted other language from the relevant statute, the
Legislature allowed this language to remain during the period from 1981 though
the present.  See Tex. Code Crim.
Proc. Ann. art 44.25 (West 2006).  





[2] Compare Clewis v. State,
922 S.W.2d 126, 131 (Tex. Crim. App. 1996) (agreeing with Judge Clinton’s
historical analysis of the Court of Criminal Appeals’s power to reverse a
judgment for factual insufficiency), overruled by Brooks,
323 S.W.3d at 894–912; id., 323 S.W.3d at 912–26, and Clewis,
922 S.W.2d at 137–43 (Clinton, J., concurring) (stating that Court of Criminal
Appeals reversed convictions during this period based on factual insufficiency
of the evidence), with Brooks, 323 S.W.3d at 907 (stating that from the time
that Texas was a republic in the 1830s until Clewis was decided in 1996,
the Court of Appeals applied a single standard to determine whether the
evidence was sufficient to support the conviction and that this standard was a
legal-sufficiency standard).  





[3] In this opinion, “legally insufficient” means that, viewing
all the evidence in the light most favorable to the prosecution, no rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.

 





[4]  It is not
necessary to address all of the reasons given by the Clewis majority or
to address the analysis in the concurring and dissenting opinions in Clewis. 
See Clewis, 922 S.W.2d at 136–66. 





[5]  It is not
necessary to address all of the analysis contained in the plurality and
concurring opinions in Brooks.  See Brooks, 323 S.W.3d at
898–907; id.
at 912–26 (Cochran, J., concurring).





[6] Likewise,
the current version of article 44.25 simply provides that “the courts of
appeals or the Court of Criminal Appeals may reverse the judgment in a criminal
action, as well upon the law as upon the facts.”  Tex. Code Crim. Proc. Ann. art 44.25.





[7] Because
Justice Seymore joins Part II of this opinion, this portion is a majority and
constitutes the opinion of the court.  See post at p. 1. 





[8] Because the
court sustains appellant’s first issue, the court need not and does not address
appellant’s second issue.