**Enrique RIOS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 13–02–732–CR.

Court of Appeals of Texas, Corpus Christi–Edinburg.

July 15, 2004.

Rehearing En Banc Overruled Sept. 2, 2004.

Joseph V. Collina, Corpus Christi, for appellant.

Carlos Valdez, Nueces County Dist. Atty., Douglas K. Norman, Asst. Dist. Atty., Corpus Christi, for appellee.

Before Justices HINOJOSA, YAÑEZ, and CASTILLO.

## OPINION

Opinion by Justice YAÑEZ.

Following a bench trial, Enrique Rios was convicted of the third-degree felony offense of failure to comply with sex-offender registration requirements. *See* TEX.CODE CRIM. PROC. ANN. arts. 62.01, 62.03, 62.10 (Vernon Supp.2004). He was sentenced to two years imprisonment. In two issues, Rios challenges the legal and factual sufficiency of the evidence to support his conviction. We hold the evidence is legally insufficient to support Rios's conviction and reverse the trial court's judgment.

### Background

On April 25, 2001, Rios registered as a sex offender living at his mother's residence, located at 2212 Mary Street in Corpus Christi, Texas. *See* TEX.CODE CRIM. PROC. ANN. arts. 62.03, 62.04 (Vernon Supp. 2004).

but rather the legal conclusion that was

drawn from that classification.

At trial, there was conflicting testimony as to whether Rios had lived continuously at the Mary Street address from the date of his registration in April 2001 through February 15, 2002, the date of the alleged violation.

Victor Ray Casares, Sr., a Corpus Christi police officer, testified that on February 15, 2002, he and officer Andrew Ybanez were conducting compliance checks on registered sex offenders. Upon arriving at 2212 Mary Street, the officers encountered Rios's mother, Natalia Petri, outside. Casares testified Petri told them she had lived at the address for twenty-two years. According to Casares, Petri said that Rios no longer lived there, that he was in Dallas, and that she had not seen him for a couple of months, since Christmas. The officers obtained Petri's signature on a form stating that Rios no longer lived at the address.

Officer Ybanez corroborated Casares's testimony. On cross-examination, Ybanez testified the officers did not search the house and admitted that it was possible Rios was there.

At trial, Petri testified that Rios had always lived with her. She said that when the officers came to her home, they told her they were patrolling the neighborhood to prevent burglaries and asked if she had seen any suspicious activities. She testified that the officers asked who lived with her, and she told them that Rios and her grandson lived there. According to Petri, she told the officers that Rios was inside the house, but was asleep. She stated that she offered to wake him, but the officers said it was not necessary. She denied that she said Rios was living in Dallas. She testified that the officer asked her to sign a document to prove they had been patrolling in the area. She specifically testified that Rios was living with her between December 2001 and February 15, 2002 and

that he had lived with her at the Mary Street address "all the time."

Tami Weidenfeller, custodian of records at Christus Spohn Hospital, verified the introduction of Rios's hospital records. The records reflect that on February 19, 2002, four days after the officers' visit, Rios attempted to obtain a refill on prescription medication by visiting the hospital. The hospital records of Rios's February 19 treatment show his address as "2212 Mary Street." Weidenfeller testified that patients are asked to provide an address upon admission, but that no other information is requested to verify a patient's address.

## Standard of Review

Claims of legal insufficiency of evidence are reviewed by examining the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Sanders v. State*, 119 S.W.3d 818, 820 (Tex.Crim.App.2003).

In a criminal conviction, sufficiency of the evidence is determined by the elements of the crime as defined by the hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). The correct charge "would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* In *Malik*, the court of criminal appeals provided that this standard can be applied to all trials, whether to the bench or to the jury. *Id.* at 240; *see also Fuller v. State*, 73 S.W.3d 250, 252 (Tex.Crim.App.2002) (evidentiary sufficien-

cy should be measured against "elements of the offense as defined by the hypothetically correct jury charge for the case" in all sufficiency cases).[1] The court of criminal appeals has made clear that under *Malik*, "the indictment [is] the basis for the allegations which must be proved" and that the hypothetically correct jury charge for the case must be "authorized by the indictment." *Gollihar v. State*, 46 S.W.3d 243, 254 (Tex.Crim.App.2001) (citing *Planter v. State*, 9 S.W.3d 156, 159, n. 5 & 6 (Tex.Crim.App.1999)).

When a statute lists more than one method of committing an offense, and the indictment alleges some, but not all, of the statutorily listed methods, the State is limited to the methods alleged. *Fuller v. State*, 73 S.W.3d 250, 255 (Tex.Crim.App. 2002) (Keller, P.J., concurring) (citing *Curry v. State*, 30 S.W.3d 394, 404 (Tex.Crim. App.2000)); *Gollihar*, 46 S.W.3d at 255.

Questions concerning the credibility of witnesses and the weight to be given their testimony are to be resolved by the trier of fact. *Mosley v. State*, 983 S.W.2d 249, 254 (Tex.Crim.App.1998). Evidence is not rendered insufficient when conflicting evidence is introduced. *Matchett v. State*, 941 S.W.2d 922, 936 (Tex.Crim.App.1996). The reviewing court must assume that the fact finder resolved conflicts, including conflicting inferences, in favor of the verdict, and must defer to that resolution. *Id.*

We also measure the factual sufficiency of the evidence in a non-jury trial by the elements of the offense as defined by a hypothetically correct jury charge for the case. *See Adi v. State*, 94 S.W.3d 124, 131 (Tex.App.-Corpus Christi 2002, pet. ref'd) (discussing application of "hypothetically correct jury charge" analytical construct in context of factual-sufficiency review in case tried to jury). In reviewing the factual sufficiency of the elements of the offense on which the State carries the burden of proof, we impartially examine all of the evidence and set aside the verdict only if "proof of guilt is so obviously weak as to undermine confidence in the [fact-finder's] determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by the contrary proof." *Swearingen v. State*, 101 S.W.3d 89, 97 (Tex.Crim.App.2003) (citing *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000)). We are also required to accord due deference to the fact-finder's determinations on the weight and credibility of the evidence and may not merely substitute our own judgment for that of the fact-finder. *Id.; Johnson*, 23 S.W.3d at 7; *see Mosley*, 983 S.W.2d at 254 (questions concerning credibility of witnesses and weight given their testimony are resolved by the trier of fact).

## Analysis

The indictment charges Rios with "failure to comply with registration requirements" and cites articles 62.01,[2] 62.03,[3] and

---

1. We note that in her dissenting opinion, Justice Castillo argues that *Malik's* unequivocal language that the *Malik* standard "can uniformly be applied to all trials, whether to the bench or to the jury," *see Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997), "should not be read in a vacuum." Justice Castillo thus repeats verbatim the argument she articulated in her concurring opinion in *Wheaton v. State*, 129 S.W.3d 267, 274 (Tex. App.-Corpus Christi 2004, no pet.) (J. Castillo, concurring).

2. Article 62.01 contains definitions of terms applicable to the sex offender registration program outlined in chapter 62. *See* TEX.CODE CRIM. PROC. ANN. art. 62.01 (Vernon Supp. 2004).

3. Article 62.03 provides, in pertinent part, that prior to being released from a penal institution, a person subject to the registration requirements must be informed that:
   (A) not later than the seventh day after the date on which the person is released or the

62.10[4] of the code of criminal procedure. *See* TEX.CODE CRIM. PROC. ANN. arts. 62.01, 62.03, 62.10 (Vernon Supp.2004). Specifically, the indictment alleges that Rios:

> on or about February 15, 2002, in Nueces County, Texas, was required to register because of a reportable conviction for Indecency with a Child, and did then and there intentionally, knowingly and recklessly fail to verify the information in the completed registration form by failing to report no later than the seventh day after his arrival in the municipality where he resided and intended to reside for more than seven days, to wit: Corpus Christi, to the local law enforcement authority, namely the Corpus Christi Police Department, who had received said registration form.

In brief, the indictment thus alleged: (1) Rios's status as a person with a reportable conviction; (2) that he intentionally, knowingly, and recklessly failed to verify the information in his registration form; and (3) by failing to report to the Corpus Christi Police Department no later than seven days after his arrival in Corpus Christi.

The State alleged Rios failed to comply with the registration requirements because:

(1) on April 25, 2001, he registered with the Corpus Christi police department as a sex offender living at 2212 Mary Street in Corpus Christi;

(2) pursuant to a visit by Corpus Christi police officers on February 15, 2002, Rios's mother signed a statement that he had not lived at 2212 Mary Street since "December 2001," a period of approximately six to eight weeks;

(3) Rios returned to Corpus Christi sometime between February 15, 2002 and February 19, 2002 because his medical records show he was admitted to the hospital in Corpus Christi on February 19, 2002; and

(4) when he returned to Corpus Christi, he failed to report "no later than the seventh day after his arrival" to the Corpus Christi police department.

In proving Rios failed to comply with registration requirements, the State was therefore limited to the allegation in the indictment: that he failed to report within seven days of his "arrival in"—or return to—Corpus Christi.

At trial, however, the State relied on Petri's statement as evidence that Rios "was *no longer living at 2212 Mary Street.*" (emphasis added). The State argued:

> [Prosecutor]: ... We do not have the burden of proving where the Defendant is. We have the burden of proving that he is *not* somewhere. And I believe in this case, again, that the evidence is clear that *he was not there.* ... And again, we do not have to prove where he was, where he might have been, but

date on which the person moves from a previous residence to a new residence in this state, the person must:
(i) register or verify registration with the local law enforcement authority in the municipality or county in which the person intends to reside .... [and]
(B) not later than the seventh day before the date on which the person moves to a new residence in this state or another state, the person must report in person to the local law enforcement authority with whom the person last registered and to the juvenile probation

officer, community supervision and corrections department officer, or parole officer supervising the person.
*See* TEX.CODE CRIM. PROC. ANN. art. 62.03(a)(1)(A), (B) (Vernon Supp.2004).

4. Article 62.10(a) provides that "[a] person commits an offense if the person is required to register and fails to comply with any requirement of this chapter." *See* TEX.CODE CRIM. PROC. ANN. art. 62.10(a) (Vernon Supp. 2004).

simply that *he was not at 2212 Mary.* (emphasis added)

The State presented no evidence regarding the date Rios allegedly returned to Corpus Christi and failed to register. In its brief, the State argues that "the trial court was also entitled to believe Rios' own admissions in his medical records that he had moved back to Corpus Christi and was residing at 2212 Mary Street on February 19, 2002." The *only* evidence supporting the State's theory that Rios "returned" to Corpus Christi after living elsewhere is Rios's medical records, which reflect he was admitted to the hospital on February 19, 2002 and gave his address as 2212 Mary Street. As noted, the custodian of the records testified that information regarding a patient's address is provided by the patient at the time of admission and that she was unaware whether there were any procedures for verifying such information.

The State argues that "[h]aving arrived back in Corpus Christi sometime between February 15, 2002, and February 19, 2002, Rios was required to verify registration with the Corpus Christi Police Department." We conclude that Rios's February 19, 2002 hospital records showing his address as 2212 Mary Street are legally insufficient to establish that he "arrived" in Corpus Christi on that date.[5]

We hold that the State offered no evidence supporting its allegation that Rios "arrived in" or returned to Corpus Christi and failed to report within seven days to the Corpus Christi Police Department. Thus, the evidence is legally insufficient to support Rios's conviction.

Because of our disposition of Rios's first issue, it is unnecessary for us to address his second issue. *See* TEX.R.APP. P. 47.1. We reverse the trial court's judgment and render a judgment of acquittal.

Dissenting opinion by Justice ERRLINDA CASTILLO.

CASTILLO, Justice, dissenting.

I respectfully dissent. I would find the evidence legally and factually sufficient to support Rios's conviction.

## I. The Evidence of Rios's Noncompliance

Rios is a convicted sex offender. He was required to verify his registration as a sex offender on an annual basis with local law enforcement authorities in the municipality where he resided.[1] Records introduced by the State through John Thomas Hornsby, custodian of sex-offender registration records for the Corpus Christi Police Department, showed that Rios verified his registration on April 25, 2001. He reported 2212 Mary Street, Corpus Christi, Texas, as his place of residence.

In February of 2002, Victor Ray Casares, Sr., an officer with the Corpus

---

5. In her dissenting opinion, Justice Castillo concludes that the evidence supports an inference that Rios "returned to and lived in Nueces County beginning no later than February 19, 2002." The evidence cited in support of this inference is: (1) that "Rios claimed his mother's phone number as his and her home as his address on the hospital's patient registration form on February 19, 2002;" and (2) Rios's hospital records contained information regarding his health care coverage showing a connection to Nueces County during the relevant time period. As

noted above, we conclude Rios's February 19 hospital records are legally insufficient to establish his arrival in Corpus Christi on that date. We also fail to see how Rios's health care card showing coverage for the relevant time period supports an inference that he arrived in Corpus Christi between February 15, 2002 and February 19, 2002.

1. *See* TEX.CODE CRIM. PROC. ANN. art. 62.02(d) (Vernon Supp.2004).

Christi Police Department, was contacting convicted sex offenders to ensure compliance with the sex-offender registration laws. Casares visited the address Rios had registered in April 2001 as his place of residence. Casares spoke with Rios's mother, Natalia Petri. Casares testified, without objection, that Petri told him Rios did not live there. She said she had not seen Rios since Christmas 2001. Casares testified, also without objection, that Petri specifically told him Rios was in Dallas. The State introduced a written statement, again without objection, signed by Petri and acknowledging that Rios had not lived at 2212 Mary Street since December 2001. The statement also included Petri's phone number.

At trial, however, Petri testified that Rios had lived with her since his release from prison and was living with her at 2212 Mary Street on February 15, 2002. She said the officers came to her home and told her they were patrolling the area for burglars. The officers did not ask her about Rios's whereabouts. She believed that the statement she signed simply acknowledged that the officers were patrolling the area.

Andrew Ybanez, an officer with the Corpus Christi Police Department, testified he was on duty with Casares on February 15, 2002. Ybanez testified Petri appeared to understand Casares's questions. Ybanez stated neither he nor Casares spoke to Petri about burglars. Ybanez added that Casares explained the contents of the written statement to Petri before she signed it.

Rios introduced medical records from Christus Spohn Memorial Hospital, located in Corpus Christi, Texas. The records showed that the hospital provided medical services to Rios on February 19, 2002. As noted by the majority, Rios provided his address at admission, giving 2212 Mary Street as his current address. He also provided the same telephone number as Petri had provided in her written statement. The medical records included a copy of Rios's Nueces County Hospital District health care card and showed a policy number and Corpus Christi address listed under "insurance" on Rios's patient registration form. The dates of coverage shown on the card are "From 10–31–01 to 4–31–02." Further, the arrest warrant contained in the clerk's record of this case reflects an officer's return showing that Rios was arrested by a Nueces County deputy in Nueces County, Texas on May 31, 2002.

Rios raises two issues challenging the legal and factual sufficiency of the evidence to support his conviction. I turn to the scope and standards of review.

## II. SUFFICIENCY SCOPE AND STANDARDS OF REVIEW

I agree that the analytical construct defined by the Texas Court of Criminal Appeals in reviewing legal- and factual-sufficiency challenges in jury trials applies equally to nonjury trials. *See Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). I disagree that *Malik* mandates grafting the language "hypothetically correct jury charge" into nonjury sufficiency analyses. Mechanical repetition of the term has no place in the context of a bench trial such as that under review in this case.

The court of criminal appeals coined the term "hypothetically correct jury charge" as shorthand for *Malik*'s cure for a specific ill: a defendant's acquittal on sufficiency grounds for charge error. *See id.* ("Moreover, the standard we formulate today ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted."). The

mischief began, not with the standard announced in *Malik*, but with one sentence:

> Hence, sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *This standard can uniformly be applied to all trials, whether to the bench or to the jury, whether or not the indictment is facially complete, and regardless of the specific wording of the jury charge actually given.*

*Id.* (emphasis added) (footnote omitted). This single statement should not be read in a vacuum. After *Malik*, the court of criminal appeals refined what it meant by the term "authorized by the indictment." *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim.App.2000). *Curry* held that "authorized by the indictment" means "that a sufficiency review must encompass 'the statutory elements of the offense ... as modified by the charging instrument.'" *Fuller v. State*, 73 S.W.3d 250, 255 (Tex. Crim.App.2002) (Keller, P.J., concurring) (quoting *Curry*, 30 S.W.3d at 404).

I conclude that in jury and nonjury cases alike, we measure the sufficiency of the evidence against the statutory elements of the offense as modified by the charging instrument. *See Curry*, 30 S.W.3d at 404. When reviewing the evidence presented to a jury, we refer to this analytical construct as a "hypothetically correct jury charge." In reviewing the sufficiency of the evidence presented in a nonjury trial, however, I would not use the term "hypothetically correct jury charge." The reference is unnecessary, given the fact that there is no jury charge in the case, hypothetical or otherwise. It would make as much sense to refer to the fact finder in a nonjury trial as the jury. The role is the same, but the name is different. I do not believe *Malik* mandates reference to a jury in the sufficiency analysis, either.

### A. Legal Sufficiency

A legal-sufficiency challenge calls for appellate review of the relevant evidence in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim.App.2003); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). We consider all the evidence that sustains the conviction, whether properly or improperly admitted or whether introduced by the prosecution or the defense, in determining the legal sufficiency of the evidence. *Conner v. State*, 67 S.W.3d 192, 197 (Tex.Crim. App.2001). Similarly, in reviewing the legal sufficiency of the evidence, we look to all of the evidence introduced during either stage of the trial. *De Garmo v. State*, 691 S.W.2d 657, 661 (Tex.Crim.App.1985).

I would measure the legal sufficiency in this case against the statutory elements of the offense as modified by the indictment. *See Fuller*, 73 S.W.3d at 254 (Keller, P.J., concurring). When a statute lists more than one method of committing an offense, and the indictment alleges some, but not all, of the statutorily listed methods, the State is limited to the methods alleged. *Fuller*, 73 S.W.3d at 255; *Curry*, 30 S.W.3d at 404. We then determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Johnson*, 23 S.W.3d at 7.

In performing a legal-sufficiency review, we are mindful that the fact finder is the exclusive judge of the credibility of wit-

nesses and the weight to be given testimony. Tex.Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Adelman v. State,* 828 S.W.2d 418, 423 (Tex.Crim.App.1992); *Butts v. State,* 835 S.W.2d 147, 151 (Tex. App.-Corpus Christi 1992, pet. ref'd). The fact finder may believe some witnesses and refuse to believe others. *Esquivel v. State,* 506 S.W.2d 613, 615 (Tex.Crim.App. 1974). It also may accept portions of a witness's testimony and reject others. *Id.; Butts,* 835 S.W.2d at 151.

If we reverse a criminal case for legal insufficiency, we vacate the judgment of conviction for legal insufficiency. *Swearingen,* 101 S.W.3d at 95. We then order a judgment of acquittal. *Id.*

### B. Factual Sufficiency

I also would measure the factual sufficiency of the evidence in this case against the elements of the offense as modified by the indictment. We are constitutionally empowered to review the judgment of the trial court to determine the factual sufficiency of the evidence used to establish the elements of the charged offense. *Johnson,* 23 S.W.3d at 6. In determining the factual sufficiency of evidence of the elements of the offense, we view all the evidence neutrally, not through the prism of "the light most favorable to the prosecution." *Id.* at 6–7 (citing *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996)). We set aside a finding of guilt only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson,* 23 S.W.3d at 7. A clearly wrong and unjust finding of guilt is "manifestly unjust," "shocks the conscience," or "clearly demonstrates bias." *Rojas v. State,* 986 S.W.2d 241, 247 (Tex.Crim.App.1998).

In conducting a factual-sufficiency review, we review the fact finder's weighing of the evidence. *Johnson,* 23 S.W.3d at 7 (citing *Clewis,* 922 S.W.2d at 133). We

review the evidence that tends to prove a material disputed fact and compare it with evidence that tends to disprove it. *Johnson,* 23 S.W.3d at 7. We are authorized to disagree with the fact finder's determination. *Id.* However, we approach a factual-sufficiency review with appropriate deference to avoid substituting our judgment for that of the fact finder. *Id.* Our evaluation should not intrude substantially on the fact finder's role as the sole judge of the weight and credibility given to witness testimony. *Id.*

We always remain aware of the fact finder's role and unique position, a position we are unable to occupy. *Id.* at 9. Exercise of our authority to disagree with the fact finder's determination is appropriate only when the record clearly indicates our intervention is necessary to stop manifest injustice. *Id.* Otherwise, we accord due deference to the fact finder's determinations, particularly those concerning the weight and credibility of the evidence. *Id.*

Every fact need not point directly and independently to the accused's guilt. *Vanderbilt v. State,* 629 S.W.2d 709, 716 (Tex. Crim.App.1981). A finding of guilt can rest on the combined and cumulative force of all the incriminating circumstances. *Id.* When an appellant challenges the factual sufficiency of the elements of the offense, we ask whether "a neutral review of all the evidence ... demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the [fact finder's] determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Zuliani v. State,* 97 S.W.3d 589, 593–94 (Tex.Crim. App.2003) (quoting *Johnson,* 23 S.W.3d at 11; *see Swearingen,* 101 S.W.3d at 97. In conducting a factual-sufficiency review in an opinion, we "show our work" when we consider and address the appellant's main argument for urging insufficiency of the

evidence. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App.2003); *Johnson*, 23 S.W.3d at 9; *Manning v. State*, 112 S.W.3d 740, 747 (Tex.App.-Houston [14th Dist.] 2003, no pet. h.); *see* TEX.R.APP. P. 47.1. This practice benefits the parties, maintains the integrity of the justice system, and improves appellate practice. *Sims*, 99 S.W.3d at 603; *Manning*, 112 S.W.3d at 747. If we reverse a criminal case for factual insufficiency, we vacate the judgment of conviction. *Clewis*, 922 S.W.2d at 133–34. We remand for a new trial a criminal case reversed for factual insufficiency, so a second fact finder has the chance to evaluate the evidence. *Swearingen*, 101 S.W.3d at 97.

### III. APPLICABLE LAW

#### A. The Sex-Offender Registration Statute

Article 62.10(a) of the Texas Code of Criminal Procedure provides that it is an offense if a person required to register as a sex offender fails to comply with any requirements in chapter 62. TEX.CODE CRIM. PROC. ANN. art. 62.10(a) (Vernon Supp.2004). Chapter 62 sets out a number of situations under which a convicted sex offender must register. Specifically, article 62.04(a) provides:

> If a person required to register intends to change address, regardless of whether the person intends to move to another state, the person shall, not later than the seventh day before the intended change, report in person to the local law enforcement authority with whom the person last registered and to the juvenile probation officer, community supervision and corrections department officer, or parole officer supervising the person and provide the authority and the officer with the person's anticipated move date and new address. If a person required to register changes address, the person shall, not later than the seventh day after changing the address, report in person to the local law enforcement authority in the municipality or county in which the person's new residence is located and provide the authority with proof of identity and proof of residence.

TEX.CODE CRIM. PROC. ANN. art. 62.04(a) (Vernon Supp.2004).

#### B. "On or About" Allegation of Date of Offense

Unless the date is a material element of an offense, it is not necessary for an indictment to specify the precise date on which the charged offense occurred. *See Garcia v. State*, 981 S.W.2d 683, 685–86 (Tex. Crim.App.1998). The primary purpose of specifying a date in the indictment is not to notify the accused of the date of the offense. *Id.* Rather, the purpose of providing a date is to show that the prosecution is not barred by the statute of limitation. *Id.* When an indictment alleges that a crime occurred "on or about" a certain date, the State may prove an offense "with a date other than the one specifically alleged so long as the date is anterior to the presentment of the indictment and within the statutory limitation period and the offense relied upon otherwise meets the description of the offense contained in the indictment." *Yzaguirre v. State*, 957 S.W.2d 38, 39 (Tex.Crim.App.1997) (quoting *Sledge v. State*, 953 S.W.2d 253, 256–57 (Tex.Crim.App.1997)).

#### C. Contents of Court's File

A trial court is presumed to know the contents of its own file. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex.Crim.App.1993). An appellate court may take judicial notice of an official document as part of the record and presume that the "trial court did as well." *Id.* (citing *Fleming v. State*, 502 S.W.2d 822, 823 (Tex.Crim.App.1973)).

## IV. THE INDICTMENT

The indictment alleged that Rios:

on or about February 15, 2002, in Nueces County, Texas, was required to register because of a reportable conviction for Indecency with a Child, and did then and there intentionally, knowingly and recklessly fail to verify the information in the completed registration form by failing to report no later than the seventh day after his arrival in the municipality where he resided and intended to reside for more than seven days, to wit: Corpus Christi, to the local law enforcement authority, namely the Corpus Christi Police Department, who had received said registration form.

In its legal-sufficiency analysis, the majority confuses what the State alleged in the indictment with the arguments the prosecutor made at trial. I would confine my legal-sufficiency review to weighing the actual evidence presented against the elements of the offense as modified by the indictment, not against the offense the prosecutor argued the State had proved.

## V. SUFFICIENCY ANALYSES

### A. Legal Sufficiency

Viewing the evidence in the light most favorable to the prosecution, the record shows that Rios properly verified his registration on April 25, 2001 but does not show that he verified his registration at any time thereafter. The absence of a record indicating verification of Rios's registration after April 25, 2001 is sufficient proof that Rios failed to do so. See TEX.R. EVID.

803(10); see also Hampton v. State, 109 S.W.3d 437, 441 n. 3 (Tex.Crim.App.2003) (absence of public record may be evidence where one would expect to find document within repository if it existed). Further, I find evidence in the record in the form of Petri's written statement and the officers' testimony regarding the information she provided that Rios moved away from Nueces County in December 2001 and was in Dallas on February 15, 2002. The record also reflects that Rios claimed his mother's phone number as his and her home as his address on the hospital's patient registration form on February 19, 2002. Other information in the hospital's records in the form of Rios's health care coverage also showed a connection to Nueces County during the relevant time period.[2] Finally, I take judicial notice in my sufficiency analysis that the arrest warrant in the court's record shows that a Nueces County deputy arrested Rios in Nueces County on May 31, 2002. See Cobb, 851 S.W.2d at 873. I presume the trial court knew the contents of its own file. See id.

Thus, when viewed in the light most favorable to the State, the State introduced direct evidence that Rios lived outside Nueces County from December 2001 through at least February 15, 2002. The evidence also supports four inferences: (1) Rios returned to and lived in Nueces County beginning no later than February 19, 2002; (2) at the time he returned, he intended to live in Nueces County more than seven days; (3) he continued to live in Nueces County more than seven days,

---

**2.** I find the hospital records relevant with respect to three inferences. The first inference, as noted by the majority, is that Rios resided in Nueces County on February 19, 2002. However, along with evidence that Rios was arrested in Nueces County on May 31, 2002, the hospital records also support two more inferences with regard to other

elements of the charged offense the State was required to prove: (1) Rios resided in Nueces County for more than seven days after his return between February 15 and February 19, 2002; and (2) he intended to reside in Nueces County for more than seven days at the time he failed to confirm his registration within seven days of his return.

through the date of his arrest there on May 31, 2002; and (4) he did not register his address again after his initial registration on April 25, 2001. The offense alleged and proved by the State—that Rios did not report within seven days of his return between February 15 and February 19, 2002 to Nueces County, where he resided and intended to reside for more than seven days—conformed with the allegations in the indictment, remained within the statute of limitations, and occurred before the presentment of the indictment. *See Yzaguirre,* 957 S.W.2d at 39. I disagree that the State was required to prove the exact date on which Rios returned to Corpus Christi.

Every fact need not point directly and independently to Rios's guilt. *See Vanderbilt,* 629 S.W.2d at 716. Given the combined and cumulative force of all the incriminating circumstances, however, I would hold the evidence legally sufficient to establish that Rios was required to but failed to register with local law enforcement authority within seven days of his return to Corpus Christi in February 2002. *See id.* Thus, I also would address Rios's factual-sufficiency arguments.

### B. Factual Sufficiency

In addition to the evidence recited above in my legal-sufficiency analysis, the record shows that Petri testified at trial that Rios had lived with her continuously since his release from prison and was living with her at 2212 Mary Street on February 15, 2002. Petri further testified that the police officers never inquired about Rios's whereabouts and misled her into signing a document stating her son no longer lived with her.

Faced with a record of historical facts that supports conflicting inferences, I presume that the trier of fact resolved any conflicts in favor of the prosecution. *See*

*Jackson,* 443 U.S. at 326. I would defer to the fact finder's resolution of conflicting evidence. *See id.; see also Johnson,* 23 S.W.3d at 9. I cannot conclude that the State's proof of Rios's guilt is so obviously weak as to undermine confidence in the fact finder's determination. *See Zuliani,* 97 S.W.3d at 593. Viewing the evidence neutrally, I would hold the evidence factually sufficient to support the conviction. *See Johnson,* 23 S.W.3d at 6.

### VI. CONCLUSION

Having overruled Rios's sufficiency challenges on appeal, I would affirm the judgment of the trial court.