

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-15-00094-CR

ALBERT DOTIE, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 276th District Court
Marion County, Texas
Trial Court No. F14540

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

O P I N I O N

Albert Dotie, Jr., was indicted on one count of failing to register or report a change of address as a sex offender. The jury found him guilty and sentenced him to four years' imprisonment. Dotie contends that the evidence is legally insufficient to sustain his conviction. We overrule his single point of error and affirm the trial court's judgment.

## I. Factual Background

Dotie was previously convicted of indecency with a child and was required to report his residence to the proper authorities pursuant to Chapter 62 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. arts. 62.001–.408 (West 2006 & Supp. 2014). For fourteen years, Dotie reported to Deronda Riley, the Marion County administrative assistant court clerk who was designated as the sex-offender registrar for the city of Jefferson, Texas. Riley testified that as a sex offender, Dotie was required to report to her annually if his residence remained the same. However, if he intended to move, he was required to report in person at least seven days prior to any intended change of address and to provide her with the new address, together with the date the change would take place.

Riley further testified that on December 10, 2013, Dotie reported his primary address as 408 Saint John Street, Jefferson, Texas. Riley also stated that Dotie reported a supplemental address of 305 West Watson Street, Jefferson, Texas. On December 22, 2013, Riley received information that Dotie had moved to 1406 Farm to Market Road (FM) 2208 in Marion County, which is designated as a Jefferson address although it is actually outside Jefferson's city limit. Dotie did not initially disclose his change of address to Riley. Instead, Riley received the information from a Louisiana law enforcement source together with documentation establishing

2

the FM 2208 address as Dotie's new address.[1]  When Riley learned that Dotie had moved and had not reported his change of address to her seven days prior to the move, she reported to Marion County Sheriff's Deputy David Quada that Dotie was in violation of his registration requirements, and Quada obtained a warrant for Dotie's arrest.

Deputy Quada is the investigator and sex offender registration officer for Marion County. At trial, Quada explained that individuals living in Jefferson who are required to register as sex offenders must do so with Riley.  He further testified that individuals living in Marion County but outside of Jefferson's city limits who are subject to sex-offender registration requirements must register with him.  When Deputy Quada received information from Riley that Dotie was residing at 1406 FM 2208, he verified that information by speaking with the landlord, Joyce Guess.  He also obtained a copy of Dotie's lease agreement with Guess.  The lease stated that Dotie and his girlfriend, Jennifer Smith, leased the premises at 1406 FM 2208 on December 18, 2013.  Guess testified that Smith moved into the residence on December 18 and that Dotie moved in "two or three days after," but she never confirmed that he was actually living there, and she testified that she did not see him very often.

Riley next saw Dotie on January 8, 2014.  Dotie came into the police station to obtain a new driver's license and told Riley that he might be back later, but he still did not report his change of address at that time.  Dotie came back two days later and finally reported the change of address

---

[1]Dotie was arrested on or around December 21, 2013, by an officer with the Shreveport, Louisiana Police Department while attending his brother's funeral.  When being booked into the Caddo Parish Jail, Dotie listed his address as 1406 FM 2208, Jefferson, Texas.  Dotie testified that when he completed the paperwork at the Caddo Parish Jail, he told the booking officer that he had intended to move to 1406 FM 2208, but had not yet done so.  According to Dotie, he asked the officer which address he should write down, and the officer told him to use the address to which he would be moving so the Shreveport Police Department would know where to contact him.  The Shreveport Police Department apparently faxed this information to Riley.

to Riley on January 10, 2014. According to Quada, on January 10, 2014, Dotie telephoned him to tell him he was changing his address from inside to outside the Jefferson city limits. Dotie told Quada that he had actually moved on January 3. Later that day, when he met Riley to make his formal report, Dotie was arrested.[2] Deputy Quada did not travel to either of the previously reported residences to determine whether Dotie lived at those addresses.

Charles McCoy testified that Dotie had worked for him for almost thirty years and that during that time, he transported Dotie to and from work each day. McCoy testified that he only picked Dotie up at 1406 FM 2208 twice. According to McCoy, the rest of the time he met Dotie at a barbeque restaurant on Highway 49. McCoy indicated that he believed Dotie lived somewhere near the restaurant, although he had never been to his house. He also testified that he did not know where Dotie actually lived, but only knew where he picked him up.

Although Dotie disagreed with Guess' testimony that he signed the lease about three days after his girlfriend signed it, he admitted that he signed the lease for the residence at 1406 FM 2208 on December 28, 2013. He also testified that he intended to move into the residence as early as December 21, 2013, but that he had not because he wanted to speak to the landlord first. Finally, Dotie testified that when he reported to Riley in December, he told her that he was "in the process of doing some business" but that he "didn't tell her what [he was] doing because [he] didn't want them knowing the information and go[ing] there and mess[ing him] up." He testified that if he

---

[2]Riley testified about the sex-offender reporting requirements. According to Riley, the offender was required to report to her in person to comply with the reporting requirements. At that meeting, she would fill out a report documenting the visit and the offender's current residence address.

Quada testified about the procedure for a registered sex offender to change his residence from inside the city limits to outside the city limits. According to Quada, the offender must first report to Riley in person and notify her of the intended move seven days prior to moving. The offender would fill out a form designated as CR39 that documents the intended move. Then Riley would forward the CR39 to Quada, and the offender would then begin reporting to Quada from that point forward.

had told Riley when he reported in December, she would have called Guess, who would never have allowed him to lease the residence.

## II.  Point of Error and Standard of Review

In his sole point of error, Dotie contends that the evidence is legally insufficient to support his conviction.  In evaluating legal sufficiency, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of failure to comply with sex-offender registration requirements beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd).  We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).  Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

## II.  Analysis

A person commits the offense of failure to comply with registration requirements if the person "is required to register and fails to comply with any requirement" of Chapter 62 of the

5

Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 62.102 (West Supp. 2014).

Under Article 62.055(a),

> If a person required to register under this chapter intends to change address, . . . the person shall, not later than the seventh day before the intended change, report in person to the local law enforcement authority designated as the person's primary registration authority by the department and to the . . . officer supervising the person and provide the authority and the officer with the person's anticipated move date and new address.

TEX. CODE CRIM. PROC. ANN. art. 62.055(a) (West Supp. 2014). The indictment alleges that on or about December 21, 2013, Dotie, as "a person required to register with the local law enforcement authority" in the city where he "resided or intended to reside for more than seven days," failed "to register or report a change of address."

Dotie offers the following to support his contention that the evidence is insufficient to support his conviction: (1) that his testimony, coupled with McCoy's, establishes that he actually lived on West Watson Street inside the city limits of Jefferson and the State failed to rebut this testimony with unequivocal evidence; (2) that the evidence proves, at best, that prior to his arrest, he merely considered moving to the 1406 FM 2208 address, but had not actually moved there; (3) that he was attempting to properly register 1406 FM 2208 as his new address when he was arrested; (4) that the State failed to prove that he actually resided at 1406 FM 2208 seven days prior to his arrest; and (5) that no one ever visited his registered addresses on Saint John Street or West Watson Street to confirm whether he lived there. Dotie relies on *Mills v. Bartlett* to support his argument that the State failed to sufficiently prove the date on which 1406 FM 2208 became his residence. *See Mills v. Bartlett*, 377 S.W.2d 636 (Tex. 1964). However, *Mills* does not support Dotie's arguments in this case.

6

Mills was a candidate for the office of Van Zandt County and Criminal District Attorney who sought an injunction to restrain the Van Zandt County Democratic Executive Committee from placing Robert Franklin Bartlett's name on the ballot as a candidate for that same office. *Id*. at 636. Mills alleged that Bartlett had failed to meet the residency requirements of the Texas Election Code. *Id*. Specifically, Mills alleged that Bartlett could not establish that he had resided in "Van Zandt County for at least six months preceding the date of the primary election" as required by Article 1.05 of the Texas Election Code. *See Mills v. Bartlett*, 375 S.W.2d 940, 941–42 (Tex. Civ. App.—Tyler 1964), *aff'd*, 377 S.W.2d 636 (Tex. 1964). The trial court denied the injunction, implicitly finding that Bartlett met the residency requirement, and the court of appeals affirmed the trial court's order. *Mills*, 377 S.W.2d at 636. The Supreme Court affirmed both lower courts' orders. *Id*.

The evidence in *Mills* established that prior to the May 2, 1964, primary election, Bartlett was an Assistant County Attorney for Van Zandt County who previously had been a student at Baylor Law School. *Id*. at 637. Prior to attending law school, he had resided in Harrison County with his parents. *Id*. During his last semester of law school, Bartlett visited the sitting Van Zandt County Attorney, Grisham, and the two men agreed that upon completing the bar examination, Bartlett would return to Van Zandt County and form a partnership with Grisham to practice law. *Id*. This meeting took place in October 1963. *Id*. After graduating from Baylor in November 1963 and being admitted to the State Bar of Texas, Bartlett moved to Van Zandt County on December 16, 1963, was appointed Assistant County Attorney of Van Zandt County, and entered

private practice in partnership with Grisham.[3]  *Id*.  Mills asserted that Bartlett's residence in Van Zandt County began on December 16, 1963, which was less than six months prior to the primary election.  *Id*.

The Texas Supreme Court noted that the residency issue ultimately turned on Bartlett's intent, yet, it noted the difficulty in defining intent.

> The term "residence" is an elastic one and is extremely difficult to define.  The meaning that must be given to it depends upon the circumstances surrounding the person involved and largely depends upon the present intention of the individual.  Volition, intention and action are all elements to be considered in determining where a person resides and such elements are equally pertinent in denoting the permanent residence or domicile.

*Id*. at 637.  More pertinent to this case, however, in response to Mills' argument that residence cannot be established by intent alone, the Supreme Court stated,

> With this we agree, but Bartlett's residence is not being determined solely by his intentions.  He not only went to Van Zandt County but while there entered into a binding contract of law partnership as well as of employment with Mr. Grisham as Assistant County Attorney and to all intentions and purposes decided and declared that Van Zandt County would be the county of his residence from that time forward.  Neither bodily presence alone nor intention alone will suffice to create the residence, but when the two coincide at that moment the residence is fixed and determined.

*Id*.

Here, just as in *Mills*, Dotie not only intended to move to 1406 FM 2208, he signed a contract to lease the premises at that address.  Even according to the version of the facts most favorable to Dotie, he intended to make 1406 FM 2208 his new residence at least as of

---

[3]In certain instances, a county or district attorney is not prohibited from maintaining a private civil law practice in addition to his official duties.  *See* TEX. GOV'T CODE ANN. § 46.005(d) (West Supp. 2014); *see also* Tex. Att'y Gen. Op. No. GA-0094 (2003).

December 21, 2013, when he was arrested in Shreveport.[4]  He signed the lease for that property on December 28, 2013.[5]  Guess testified that Dotie "moved his stuff in" three days after he signed the lease.  Quada testified that Dotie told him he had actually moved into 1406 FM 2208 on January 3, 2014.  Dotie admitted at trial that he "didn't tell [Riley] what [he was] doing because [he] didn't want them knowing the information and go[ing] there and mess[ing him] up."

Therefore, under the broad definition of residence set forth in *Mills*, Dotie's intent combined with his physical presence at that residence is sufficient to create his residence at 1406 FM 2208 as of December 28, 2013.[6]  Yet, the earliest anyone, including Dotie, testified that he actually notified anyone about his move was January 10, 2014, when he reported to Riley.  Because he did not notify the proper authorities seven days before his move to 1406 FM 2208—or December 21, 2013—Dotie failed to comply with the registration requirements of Article 63.055(a).  Consequently, the evidence is sufficient to support his conviction.

Dotie further contends that the evidence in this case is legally insufficient because there is conflicting evidence as to where he was living and the State failed to establish that he was not actually living at one of the two addresses he had previously reported.  He cites *Rios v. State*, 141 S.W.3d 750 (Tex. App.—Corpus Christi 2004, pet. ref'd), in support of this argument.  In *Rios*, the defendant registered with the Corpus Christi Police Department on April 25, 2001, that he was

---

[4] Dotie testified that he was actually arrested on December 18, 2013.

[5] Guess testified that Dotie actually signed the lease on December 21, 2013.

[6] *See also Willet v. Cole*, 249 S.W.3d 585, 589 (Tex. App.—Waco 2008, no pet.) ("Elements to be considered in determining a person's residence include volition, intention, and action.  One element alone is insufficient to establish residency; there must be a nexus among the elements to fix and determine a residence.  Evidentiary factors such as presence and intent may be established by conduct such as where a person sleeps and keeps personal belongings such as clothes and furniture." (citations omitted)).

9

residing at his mother's house at 2212 Mary Street, Corpus Christi, Texas. *Id*. at 753. The State presented testimony from two investigators with the Corpus Christi Police Department that during a compliance visit to 2212 Mary Street, Rios' mother told them that Rios did not live there anymore and that she had not seen him in a couple of months. *Id*. at 751.

At trial, Rios' mother denied having made those statements to the investigators. *Id*. Additionally, records from a Corpus Christi hospital showed that Rios had been admitted to that hospital on February 19, 2002, four days after the compliance visit, and these records identified 2212 Mary Street as Rios' residence. *Id*. The State concluded, based on Rios' mother's original statement to the investigating officers and the hospital admission records dated four days later, Rios must have moved back to Corpus Christi after the compliance visit but prior to the hospital admission. *Id*. Therefore, the State did not indict Rios for moving from 2212 Mary Street without notifying the authorities of his intent to move. Instead, he was indicted for returning to 2212 Mary Street without timely notifying authorities of his intent to return.

Typically, in a failure to register case, the State attempts to prove that the defendant has moved from his last reported address, and the defendant asserts that he is still living at the last reported address. But in *Rios*, by constructing its theory of culpability as it did, the State was required to prove that Rios was actually living at his last reported address. The State attempted to meet that burden by offering the hospital records as an admission by Rios that he had returned, but the majority held that simply introducing medical records listing an address was not sufficient to establish that he had actually moved back into that residence. Thus, the State failed to prove the facts it alleged in the indictment. Consequently, the State's failure of proof in *Rios* did not arise

10

from its failure to establish that Rios *was not* living at his reported address, but from its failure to establish that he *was* living at his reported address.

Here, by contrast, the State alleged that Dotie moved away from his reported addresses to a new, unreported address, and it established that he was residing at the new address. As we noted above, the State presented testimony from Dotie himself establishing that he intended to move, that he signed a lease for that new, unreported residence, and that he moved his possessions to the new address. The State also presented testimony that the earliest Dotie ever mentioned his move to any reporting authority was January 10, 2014, which was after he had already moved. This is sufficient to establish the State's allegations in this case. Unlike in *Rios*, the State proved what it alleged in this case.

Finally, Dotie cites to *Green v. State*, where the court of appeals held the evidence legally insufficient to show that the defendant failed to report an intended change of address because evidence that the defendant was living at a different address at some point in time did not, by itself, justify a reasonable inference that the defendant ever had an intent to change his address or that he failed to report not later than the seventh day before the date of the intended address change. *Green v. State*, 350 S.W.3d 617, 633 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (Frost, J., concurring) (plurality op.). However, *Green* is no longer good law, as the Texas Court of Criminal Appeals abrogated such reasoning in *Thomas v. State*, where it concluded that because there was evidence that a defendant was living at a new address as of a specific date, the jury could have reasonably concluded that the defendant intended to change his residence on that same day. *Thomas v. State*, 444 S.W.3d 4, 10–11 (Tex. Crim. App. 2014); *see also Gilder v. State*, No. 14-

11

14-00523-CR, 2015 WL 3917924, *4 (Tex. App.—Houston [14th Dist.] June 25, 2015, no pet.) (recognizing abrogation of *Green*). Accordingly, *Green* does not contradict our holding here.

### III. Conclusion

Viewing the evidence in the light most favorable to the jury's verdict, we find that a rational jury could have found beyond a reasonable doubt that Dotie failed to register or report a change of address. *See* TEX. CODE CRIM. PROC. ANN. art. 62.055(a); *see Brooks*, 323 S.W.3d at 912. While there was some testimony indicating that Dotie may also have been present at one or more previously reported address during the relevant time period, the jury, as the trier of fact and sole judge of witness credibility, could have rationally rejected that evidence. We must assume that the jury resolved any conflicts in the evidence in favor of the verdict. *See Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998); *see also Matchett v. State*, 941 S.W.2d 941, 936 (Tex. Crim. App. 1996). Having found evidence sufficient to support the jury's verdict, we overrule this point of error.

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:     September 17, 2015
Date Decided:       September 25, 2015

Publish

12