**Opinion issued August 9, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00666-CR

————————————

**ROBERT LEE BURNETT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 506th District Court**
**Grimes County, Texas**
**Trial Court Case No. 17685**

---

# O P I N I O N

A jury convicted appellant, Robert Lee Burnett, of failure to comply with sex-offender registration requirements.[1] The trial court found two enhancement paragraphs true and assessed appellant's punishment at sixty years' confinement.

---

[1]    *See* TEX. CODE CRIM. PROC. ANN. art. 62.102 (West 2015).

In his sole issue on appeal, appellant argues that the State's evidence was legally insufficient to establish that he moved or intended to move residences, thus triggering his duty to report his new address at least seven days before the anticipated move date.

We affirm.

## Background

Appellant is required to register as a sex offender for his lifetime under Code of Criminal Procedure chapter 62 due to a 1981 conviction for burglary of a habitation with intent to commit rape. In 2014, appellant had filed a notice with the Grimes County Sheriff's Department registering his address as 4789 FM 1696, Iola, Texas ("Iola address" or "Iola property"). Following an investigation of whether he still resided at the Iola address, appellant was arrested and indicted for failure to comply with registration requirements. The indictment, in relevant part, provided that

> on or about JULY 2, 2014 [appellant] did then and there, while being a person required to register with the local law enforcement authority in the county where the defendant resided or intended to reside for more than seven days, to-wit: Grimes, because of a reportable conviction [for] BURGLARY OF A HABITATION [TO] COMMIT RAPE, intentionally or knowingly fail to change address by failing to report in person to the local law enforcement authority designated as defendant's primary registration authority to wit: Grimes County Sheriff's Department, with the person's anticipated move date and new address within seven (7) days before the intended change.

2

At trial, Investigator M. Fiaschetti testified that he was responsible for the Sex Offender Program in Grimes County, having taken over those duties from Lieutenant J. Wren. Appellant's brother owned the Iola property that appellant listed as his address. Investigator Fiaschetti testified that appellant's brother contacted him and informed him that appellant did not live at the Iola address. Appellant's brother gave Investigator Fiaschetti and another investigator access to the Iola property on July 2, 2014. Investigator Fiaschetti described the Iola property as a single-wide mobile home that seemed abandoned: the yard was full of overgrown grass, there were dead rodents inside the mobile home, the skirting around the mobile home had been removed, there was no running water, the kitchen cabinets were all open, there was no furniture in the living room or dining area, and the bedrooms were sparely furnished. Investigator Fiaschetti took photographs showing the exterior and interior of the home on that day and the State offered them into evidence. Based on his observations, Investigator Fiaschetti decided that the home was abandoned and left the Iola property to secure a warrant.

Investigator Fiaschetti further testified that he returned to the Iola address, accompanied by Deputy K. Pittman, on July 14 and taped a business card between the door and the doorframe. He also took additional photographs, including one of the kitchen. This photograph showed that various cabinets were open and that there

were no dishes near the sink. The State offered this picture into evidence. Deputy Pittman testified that, on July 14, there were no fresh tracks along the cattle trail that led to the property and that he thought the property looked abandoned. Investigator Fiaschetti further testified that the business card he had left on July 14 was undisturbed when he returned to check on the home on July 21. Appellant was arrested in August 2014 and charged with failure to comply with sex-offender registration requirements.

Lieutenant J. Wren testified at trial that, after his arrest, appellant handwrote a "Request for Service" to Lieutenant Wren in order to "try to resolve this misunderstanding," because Wren had previously been the officer in charge of sex-offender registration for the Grimes County Sheriff's Department. Lieutenant Wren went to the jail and met with appellant. Appellant waived his *Miranda* rights and spoke with Wren during a recorded interview. At trial, this recording was played for the jury. On the recording, appellant explained the circumstances surrounding his absence from the Iola property but never admitted that he no longer lived at the Iola address. He described his relationship with his brother, which Lieutenant Wren characterized as "love/hate," and explained that he had lived in a tent for some amount of time before his arrest. He admitted that he probably should have "called in" to the sheriff's office. Appellant also

4

acknowledged that he and Lieutenant Wren had previously discussed what he should do if he were kicked out of the Iola residence and became transient.

Two individuals—Rachel Jean Morris, who had known appellant for many years, and Robbie Lynn Brooks, appellant's sister—testified on his behalf. They explained that appellant's brother owned the Iola property and confirmed the "love/hate" relationship appellant had with his brother. They both testified that appellant's brother would frequently become angry at appellant and threaten to evict him or to notify the sheriff's office that appellant was no longer living at the Iola property. They both testified that the mobile home was filthy, even while appellant resided there, and described the house as sparsely furnished. Morris noted that, when appellant lived there, the kitchen sink was usually filled with dirty dishes, the dining room had a table and chairs, and there was a sofa in the living room. Brooks testified that, at one point, appellant's brother had turned off the power to the Iola property, but appellant continued to live there even though it was "almost uninhabitable." Brooks also testified that appellant had a table and chairs, a sofa, and a stuffed bobcat in the living room. Morris testified that she had last seen appellant at the Iola address on June 25, 2014; Brooks testified that she had taken gas to appellant at the Iola property on July 5 and 6, 2014. She stated that, at that time, appellant was working on the property to help his brother with his cows

and with some mowing and other tasks, but he was "trying to stay away" from his brother, who was "really mad" at him.

The jury convicted appellant of failure to comply with registration requirements. The trial court found two enhancement paragraphs true and assessed appellant's punishment at sixty years' confinement. Appellant appealed the conviction.

**Sufficiency of the Evidence**

The sole issue on appeal is whether the State's evidence was legally sufficient to establish that appellant intended to change his address.

**A.      Standard of Review**

In conducting a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011). We defer to the factfinder to resolve conflicts, weigh the evidence, and draw reasonable inferences. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.* Evidence is insufficient when (1) the record contains no evidence, or merely a "modicum" of evidence, probative

6

of an element of the offense, (2) the evidence conclusively establishes a reasonable doubt, or (3) the acts that the State alleges, if true, do not constitute the charged crime. *Kiffe v. State*, 361 S.W.3d 104, 107–08 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *see Jackson*, 443 U.S. at 314–19, 99 S. Ct. at 2786–89; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Code of Criminal Procedure article 62.102 provides that a person who is required to register as a sex offender and fails to comply with the requirements of chapter 62 commits an offense. *See* TEX. CODE CRIM. PROC. ANN. art. 62.102 (West 2015). Code of Criminal Procedure article 62.055(a) requires, in part, that if any person who is required to register as a sex offender "intends to change address, . . . [he] shall, not later than the seventh day before the intended change, report in person to the local law enforcement authority designated as the person's primary registration authority . . . and provide the authority . . . with the person's anticipated move date and new address." *Id.* art. 62.055(a) (West Supp. 2015). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. TEX. PENAL CODE ANN. § 6.03(a) (West 2015); *see Harris v. State*, 364 S.W.3d 328, 336 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

Here, based on the indictment, the State had to prove that appellant was required to register as a sex offender under Code of Criminal Procedure chapter 62 and that he failed to comply with article 62.055(a) by failing to notify the proper authorities of the new address within seven days of the intended move date. *See Thomas v. State*, 444 S.W.3d 4, 9–10 & n.1 (Tex. Crim. App. 2014) (addressing legal sufficiency of evidence based on indictment essentially identical to that in present case).

**B.   Analysis**

Appellant does not dispute that he was required to register as a sex offender under chapter 62. Rather, he argues that the State failed to prove his noncompliance with article 62.005(a) because it provided no evidence that he intended to move. Appellant argues that the State presented evidence demonstrating only that he was not at the Iola address on three days in July.

In 2014, the Court of Criminal Appeals held that evidence that a defendant was living at a new address as of a particular day was sufficient for a jury to have reasonably concluded that he intended to change addresses on that date. *See id.* at 10–11. In *Gilder v. State*, the Fourteenth Court of Appeals applied the reasoning in *Thomas* and concluded that evidence that the apartment listed as the defendant's registered address had been vacated as of January 3, 2013, constituted evidence

8

that he had intended to move on that date. 469 S.W.3d 636, 640–41 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

In the present case, the State presented evidence of more than just appellant's absence from the Iola address on three days in July. Investigator Fiaschetti testified that, when he visited the Iola address on July 2, 2014, it appeared uninhabited—the yard was full of overgrown grass, there were dead rodents inside, there was no running water, the kitchen cabinets were all open, and there was no furniture in the living room or dining area. The photographs he took of the unfurnished and unkempt house also supported an inference that appellant no longer lived at the Iola address. Deputy Pittman testified that, on July 14, there were no fresh tracks leading to the Iola residence. Investigator Fiaschetti testified that, when following up at the Iola residence on July 21, he found the business card he had placed in appellant's doorway on July 14 still undisturbed. Thus, the State's evidence was sufficient to establish that appellant was no longer residing at the Iola address as of July 2, and it permitted an inference that appellant intended to change his address as of that date. *See Thomas*, 444 S.W.3d at 10–11; *Gilder*, 469 S.W.3d at 640–41.

Appellant does not dispute that he never notified the sheriff's office of any change in his residence. He told Lieutenant Wren that he had been living in a tent for some amount of time before his arrest in August, and he acknowledged in this

9

conversation that he was aware of his registration obligations in the event he became homeless or transient. Therefore, the evidence is sufficient for a rational jury to reasonably conclude that appellant was not living at his registered address as of July 2, 2014, and that he was not registered at any other address.

Appellant argues that Morris's and Brooks's testimony indicated that he had resided at the Iola address "throughout the summer." Morris testified that she had last seen appellant at the Iola address on June 25, 2014, and Brooks testified that she had taken gas to appellant at the Iola property on July 5 and 6. Contrary to appellant's assertion in his brief, this testimony does not establish that he was actually residing at the Iola address throughout the summer. Moreover, while Morris and Brooks testified that the house was usually filthy and sparsely furnished when appellant lived there, they also testified that appellant had dishes, a table and chairs, a sofa, and a stuffed bobcat in the home. These items were not present when Investigator Fiaschetti visited and took photographs on July 2. Finally, the jury, as the finder of fact, was the sole judge of the credibility of witnesses and the weight to be given to testimony and evidence. *See Thomas*, 444 S.W.3d at 10. It was within the jury's discretion to believe Investigator Fiaschetti's testimony and photographs demonstrating that appellant had moved out of the Iola property as of July 2.

The fact that the evidence demonstrating that appellant had moved from the Iola address was largely circumstantial is irrelevant. The circumstantial evidence discussed above is sufficient to support a conclusion that appellant was no longer residing at the Iola address as of July 2, which was all that the State needed to prove. *See Hooper*, 214 S.W.3d at 13 (holding that circumstantial evidence is as probative as direct evidence, and circumstantial evidence alone can establish guilt).

Finally, appellant misconstrues the State's burden in arguing that the evidence was insufficient because the State provided no evidence of the address that he should have registered pursuant to chapter 62. Under the language of the indictment, the State was not required to prove where appellant was actually residing in July; it was sufficient for the State to establish that appellant had moved from his registered address without informing the proper authorities in a timely manner. *See Thomas*, 444 S.W.3d at 10–11.

Appellant's reliance on *Rios v. State*, 141 S.W.3d 750 (Tex. App.—Corpus Christi 2004, pet. ref'd), is misplaced. In *Rios*, the State was limited by its indictment to proving that the appellant had "failed to report within seven days of his 'arrival in' . . . Corpus Christi." *Id.* at 753. In other words, the indictment in *Rios* required the State to prove the date that Rios "arrived" in Corpus Christi at a new, unregistered address in order for the jury to conclude that Rios failed to report within seven days of that date. *See id.* Here, by contrast, the indictment alleged that

appellant failed to report an intended change in address at least seven days before his move date. *See Thomas*, 444 S.W.3d at 10 (concluding, under nearly identical indictment, that evidence that Thomas was living at unregistered address on alleged move date was sufficient to support conclusion that he had intended to move by that date); *Gilder*, 469 S.W.3d at 640–41 (holding that evidence Gilder had vacated registered address by January 3 was sufficient to establish that he intended to move as of that date); *see also Dotie v. State*, 477 S.W.3d 482, 488 (Tex. App.—Texarkana 2015, no pet.) (describing "typical" failure to register case as requiring State to prove that defendant has moved from his last reported address and contrasting that "typical" case with indictment in *Rios*).

We conclude that the evidence was sufficient to support the jury's conclusion that appellant failed to comply with the sex-offender registration requirements.

We overrule appellant's sole issue on appeal.

**Conclusion**

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Brown, and Huddle.

Publish. TEX. R. APP. P. 47.2(b).